**KENTUCKY BAR ASSOCIATION, Movant**

v.

**An UNNAMED ATTORNEY, Respondent**

**2015-SC-000574-KB**

Supreme Court of Kentucky.

December 17, 2015

## OPINION AND ORDER

The Trial Commissioner recommends this Court sanction Respondent with a private reprimand and order additional ethics classes for her alleged violations of Supreme Court Rule (SCR) 3.130–3.5(b) (ex-parte communication) and SCR 3.130–5.5(a) (unauthorized practice of law).

Because neither party has filed a notice of appeal, this case comes to the Court pursuant to SCR 3.360(4).[1] Finding the Trial Commissioner's report and recommendation to be supported by the record and the law, this Court declines to review the decision and adopts the Trial Commissioner's recommendation.

## I. BACKGROUND

Respondent represented her son, John Doe,[2] in a child custody dispute pending in Fayette County Family Court. Jane Smith, the child's mother and adverse party, sought to transfer the case to New York and filed a Petition for Registration of Foreign Child Custody Order and to Assume Jurisdiction in the Family Court of the State of New York (New York Family Court). The New York Family Court sent Mr. Doe a notice of the request, which stated that he may contest the registration by filing an objection within twenty days. Within twenty days thereafter, Respondent sent a letter to the New York Family Court Clerk, identifying herself as "the attorney representing the father in a family court proceeding in Lexington, Kentucky." In the letter, Respondent made legal arguments contesting jurisdiction and attached interrogatory answers, docket sheets, domestic violence petitions and orders, and other pleadings from the Fayette County Family Court proceeding. Respondent did not send a copy of this letter to Ms. Smith, her counsel, or any other party. Respondent is not licensed to practice law in New York, and she did not make a motion to be admitted in New York *pro hac vice.*

Months thereafter, Judy Baker, a professional process server, attempted to serve Mr. Doe with legal process concerning the proceedings pending in New York. Ms. Baker went to the address provided to her by her employer and was met at the door by Respondent. Ms. Baker testified that Respondent refused to accept service and yelled and cursed at her. Respondent testified that she never yelled or cursed but was only instructing Ms. Baker how to lawfully serve process.

1. "Within 30 days after the filing with the Disciplinary Clerk [the Trial Commissioner's report], either party may file a notice of appeal with the Disciplinary Clerk. If no notice of appeal is timely filed, the entire record shall be forwarded to the [Supreme] Court for entry of a final order pursuant to SCR 3.370(9)." That rule states, "[i]f no notice of review is filed by either of the parties, or the Court under paragraph eight (8) of this rule, the Court shall enter an order adopting the decision of the Board or the Trial Commissioner, whichever the case may be, relating to all matters." SCR 3.370(9).

2. We have chosen pseudonyms for the witnesses to protect the confidentiality of this proceeding.

As a result of these events, the KBA Inquiry Commission brought four charges against Respondent:

1) Count I alleged that Respondent violated SCR 3.130–3.5(b) ("a lawyer shall not ... communicate ex parte with [a judge, juror, or other official] as to the merits of the cause except as permitted by law or court order") when she sent the letter and other documents to the New York Family Court Clerk without sending a copy to the adverse party.

2) Count II alleged that Respondent violated SCR 3.130–4.4(a) ("a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person") when she sent the documents relating to Ms. Smith's mental health history to the New York Family Court and when she prevented Ms. Baker from serving process on Mr. Doe.

3) Count III alleged that Respondent violated SCR 3.130–5.5(a) ("a lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction") when she sent the letter and other documents to the New York Family Court Clerk without being licensed to practice law in New York or without making a motion to be admitted *pro hac vice*.

4) Count IV alleged the Respondent violated SCR 130–1.7(a)(2) ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest") when she represented her son in a child custody case involving her own grandchild.

The Trial Commissioner held an evidentiary hearing to adjudicate these charges. Bar Counsel called Respondent and Ms. Baker to testify, and they testified consistent with the facts set forth above. Bar Counsel also introduced a number of exhibits, including the letter and documents sent to the New York Family Court Clerk. Respondent, *pro se*, called Mr. Doe and another witness to testify, and they testified that Mr. Doe had not lived at the residence where Ms. Baker attempted to serve him for some time and that Respondent had an ethical and polite character. Following the hearing, both parties filed post-trial briefs, which were considered by the Trial Commissioner before reaching any recommendations.

In his final report, the Trial Commissioner recommended that Respondent be found guilty of counts I and III and recommended a private reprimand and that Respondent be required to complete two additional hours of Continuing Legal Education (CLE) in ethics above the number of mandatory hours required for licensing purposes. The Trial Commissioner based the sanction on the finding that the violations did not materially affect the New York Family Court proceedings and that they occurred due to carelessness or inadvertence and not greed or malice.

After making this finding, the Trial Commissioner reviewed Respondent's prior discipline record, which revealed that the Inquiry Commission had privately admonished Respondent once before for violating SCR 3.130–1.1 (failing to provide competent representation) and SCR 3.130–4.4(a) ("us[ing] means that have no substantial purpose other than to embarrass, delay, or burden a third person"). Those violations arose out of the same child custody dispute as the current charges and stemmed from numerous violations of the Civil Rules and Respondent's filing of repetitive motions, refusing to sign orders, and causing general delay and burden in

the proceedings. The Trial Commissioner found that Respondent's prior disciplinary record did not justify or require an enhanced sanction.

## II. ANALYSIS

We adopt the Trial Commissioner's recommendations regarding guilt. As to counts I and III, Respondent argued three defenses. First, she argued that sending the letter and other documents to the New York Family Court Clerk did not constitute the practice of law. The Trial Commissioner was not persuaded by this argument, finding that the letter constituted the practice of law under any reasonable definition or interpretation. We agree that Respondent's actions fall within the broad definition of "practice of law" as stated in SCR 3.020, i.e., "any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services."

Second, Respondent argued that she was unaware that Ms. Smith was represented by counsel and that, therefore, she did not know to whom she should send the letter. The Trial Commissioner did not find this argument to be persuasive, and neither do we. Respondent did not serve Ms. Smith, the known adverse party, nor did she attempt to determine if Ms. Smith was represented by counsel from the New York Family Court Clerk.

Finally, Respondent argued that the New York ethical rules should govern her conduct because the conduct at issue occurred primarily in New York. The Trial Commissioner found this argument to have no merit. We agree and add that "[a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." SCR 3.130(8.5)(a). We note that this Court has sanctioned Kentucky attorneys for practicing in other jurisdictions without authorization. *See Moeves v. Kentucky Bar Association*, 380 S.W.3d 536, 538–39 (Ky.2012) and *Kentucky Bar Association v. Kaiser*, 814 S.W.2d 923, 925 (Ky.1991). Furthermore, even if we agree with Respondent that the New York ethical rules should govern, New York Rules of Professional Conduct, like Kentucky's rules, prohibit *ex parte* communication and the unauthorized practice of law. N.Y. Judiciary Law, Rule of Professional Conduct 3.5(a)(2) and 5.5(a) (McKinney 2015).

As to count II, the Trial Commissioner agreed with Respondent that sending the documents to the New York Family Court Clerk was an attempt to represent her client and not to embarrass or cause delay to a third person. We agree with this assessment primarily because the documents in question were either answers to discovery or part of the record in the case pending before the Fayette County Family Court. In addition, we agree with the Trial Commissioner that the exchange between Respondent and Ms. Baker did not rise to the level of an ethical violation. As the Trial Commissioner found, Respondent did not prevent Ms. Baker from serving process because Mr. Doe was most likely not present at the house, and, although Respondent may have been unkind or unfriendly, she was not threatening or abusive.

Concerning count IV, the Trial Commissioner did not find sufficient evidence of a conflict of interest, and we agree. Some risk exists that Respondent's personal interest in her relationship with her grandchild may have hampered her representation of Mr. Doe; however, the

mere existence of that relationship alone is not sufficient to establish a conflict of interest.

█ We adopt the Trial Commissioner's sanction recommendation as well. There is little guidance from previous decisions on the proper sanction for violations of SCR 3.130–3.5(b) and SCR 3.130–5.5(a) in this context. In most cases addressing these violations, the Court considered a host of other violations which were more egregious and resulted in a wide range of sanctions.

For example, in *Kaiser*, this Court suspended the attorney from the practice of law for three years when she was found guilty of numerous violations stemming from making knowing misrepresentations to an Ohio court that she was authorized to practice law in Ohio. 814 S.W.2d at 924–25. Likewise, in *Davis*, this Court suspended the attorney from the practice of law for six months when he engaged in *ex parte* communication with the circuit judge as prohibited in SCR 3.130–3.5(b) but also made misrepresentations of material fact, including falsifying a certification of service. *Kentucky Bar Association v. Davis*, 847 S.W.2d 57, 58 (Ky.1993). Finally, in *Wright*, this Court sanctioned the attorney with a public reprimand when, while representing a client at a prehearing conference, she failed to disclose that she had been suspended from the practice of law and thus violated SCR 3.130–5.5(a). *Wright v. Kentucky Bar Association*, 169 S.W.3d 858, 859–60 (Ky.2005).

We are satisfied that this case is less egregious than *Wright*. Respondent neither made a misrepresentation nor failed to disclose a material fact. While it is true she engaged in the unauthorized practice of law, it was more a product of confusion or mistake rather than deceit. Furthermore, sending a letter to a clerk is arguably less serious than appearing in court and making arguments before a judge. Respondent may have reasonably believed that because she was representing Mr. Doe in the Fayette County proceeding, she was permitted to continue her representation in the petition to relocate the action to New York.

Based on the Trial Commissioner's finding that there was no evidence that Respondent's *ex parte* violation caused any miscarriage of justice or materially affected the New York proceeding in any way, we agree that this sanction is appropriate for that charge as well. The Trial Commissioner was convinced, and so are we, that the violation of SCR 3.130–3.5(b) was a product of the same confusion or mistake rather than evidence of dishonesty.

We also note that the KBA does not contest the Trial Commissioner's findings or recommendations and, while we are not bound by the KBA's acceptance, we find it to be persuasive in this case. Furthermore, having reviewed the record and the law in light of Respondent's disciplinary record, we agree it does not justify or require an enhanced sanction.

The Trial Commissioner thoroughly considered the unique facts of the case, including the aggravating and mitigating factors, and his recommendation is supported by law. Accordingly, this Court adopts the Trial Commissioner's recommendation and hereby ORDERS:

1) The Respondent is not guilty of two counts of professional misconduct as charged by the Inquiry Commission, namely, violation of SCR 3.130–4.4(a) and SCR 130–1.7(a)(2);

2) The Respondent is guilty of two counts of professional misconduct as charged by the Inquiry Commission, namely, violation of SCR 3.130–3.5(b) and SCR 3.130–5.5(a).

3) The Respondent is hereby privately reprimanded for those violations and required to complete two additional hours of Continuing Legal Education in ethics above the number of mandatory hours required for licensing purposes within one year of the date of this Opinion and Order.

4) In accordance with SCR 3.450, the Respondent must pay all costs associated with these disciplinary proceedings, said sum being $1,958.83 as certified to this Court, and for which execution may issue from this Court upon finality of this Opinion and Order.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. All concur. Wright, J., not sitting.